Filed 8/14/25  P. v. Garrett CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ELLIS GARRETT,<br><br>Defendant and Appellant. | B332007<br><br>(Los Angeles County<br>Super. Ct. No. TA155828) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sean D. Coen, Judge. Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Ellis Garrett appeals his conviction for murder and attempted murder. He argues the trial court wrongly admitted certain gang evidence at trial and abused its discretion in imposing his sentence. We reject his challenges, and we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

This criminal appeal arises from a shooting at the El Ranchito Market in Los Angeles on August 28, 2021.[1] The victims, Luvon Lucas and T.G.,[2] went to the market together that day to make some purchases. T.G. was Lucas's uncle. Another individual entered the store while they were there. Detective Michael Levant testified witnesses told him that individual asked the victims, "Where you from?," to which Lucas replied "This is Hat Gang Watts."

The market cashier testified she heard a sound similar to someone pulling back the slide on top of a gun to cock it. Lucas, T.G., and the other individual ran out of the store's front door. After the cashier heard an initial gunshot, she ran toward the back of the store. She heard about four or five gunshots in total.

After the shooting stopped, the cashier went outside and saw Lucas lying on the ground in front of the market. He had been shot in the arm and the chest. Lucas died from his injuries.

---

[1] In this summary, we focus on those facts relevant to the issues raised on appeal and " 'construe the facts in the light most favorable to the judgment.' " (*People v. Curl* (2009) 46 Cal.4th 339, 342, fn. 3.)

[2] We refer to the surviving victim by his initials. (See Cal. Rules of Court, rule 8.90(b)(4).)

The cashier did not see T.G. Police later learned T.G. had been shot in the stomach and was treated at a nearby hospital.[3]

At the time of the shooting, a witness was headed toward her parked car outside the market. She saw Garrett shooting toward the market from the vicinity of her car. He was wearing a white shirt and black pants, and a red and white bandana covered part of his head. Cell phone records showed Garrett's cell phone was in the vicinity of the market at the time of the shooting. After the shooting, Garrett fled the scene on foot.

On July 14, 2022, Garrett was charged in an information with the premeditated murder of Lucas (Pen. Code,[4] § 187, subd. (a); count 1), and attempted murder of T.G. (§§ 189, subd. (a), 664; count 2.) It was further alleged that Garrett personally used a firearm in those crimes. (See § 12022.5, subd. (a).) He was tried by a jury during April and May 2023.

Police believed the shooting was gang related because of the question posed to the victims in the market, and because video surveillance showed a suspicious vehicle at the scene which had arrived from and then returned to the territory of the Bishop Bloods, a rival gang to the Hat Gang Watts Crips. Evidence was introduced at trial that some witnesses were reluctant to cooperate with the investigation and prosecution because they feared for their safety.

In light of the prosecution's theory of the case, Detective Mitchell Woods, a police gang expert, testified. He explained to the jury general aspects of gang culture in Los Angeles, such as

---

[3]     T.G. refused to speak to police at the hospital and police were unable to serve him with a subpoena to testify at trial.

[4]     Undesignated statutory references are to the Penal Code.

gang territory, rivalries, hierarchies, and retaliation; how an individual joins a gang; and gang members' use of monikers. He also explained community members were commonly reluctant to cooperate with police investigations of gang-related crime.

One of the gangs to which Detective Woods was assigned was the Bebop Bloods, a gang aligned with the Bishop Bloods. The Hat Gang Watts Crips is another gang controlling a nearby territory and is a rival to both the Bebops and the Bishops. Woods testified to his opinion Garrett was a Bebop Bloods member and T.G. was a Hat Gang Watts Crips member. Woods gave the jury context about Garrett's social media photos and messages, explaining how certain slang, gestures, colors, and insignias therein were derogatory to the Crips and reflected his membership in the Bebop Bloods.

The jury found Garrett guilty of second degree murder and attempted murder without premeditation, and it found the firearm allegations true. Garrett was sentenced to: 11 years in prison on count 2 (seven years for attempted murder and four years for the firearm enhancement); and 19 years to life in prison on count 1 (15 years for second degree murder and four years for the firearm enhancement), to run consecutive to the sentence on count 2.

Judgment was entered on July 21, 2023. On October 26, 2023, our court granted Garrett's application for relief from default for failure to file a timely notice of appeal. (See *People v. Zarazua* (2009) 179 Cal.App.4th 1054, 1058 ["the appellate court may deem the notice of appeal to have been constructively filed in a timely manner"]; see also § 1237, subd. (a).) Garrett timely filed a notice of appeal within the period prescribed by that order.

## DISCUSSION

## I.    Gang Evidence Was Properly Admitted at Trial

Garrett argues the trial court erred in failing to exclude evidence introduced via the testimony of Detective Woods. He does not specifically identify the problematic evidence, but appears to challenge Woods's testimony in general, including that: "[Garrett] was a gang member with many tattoos," showing "his desire to harm Crips"; Woods had stopped Garrett "many times"; Crips and Bloods are rival gangs; "gangs have hierarchies" their members rise within based on the number and severity of crimes they commit to benefit the gang; the community fears retaliation by gangs if they cooperate with law enforcement; and evidence regarding "gang culture and the so-called gang lifestyle."

Before trial, Garrett objected to the introduction of gang evidence in general, pursuant to Evidence Code section 352, and asked for it to be "limit[ed] to the bare minimum that the People need." The trial court determined gang evidence was relevant to "motive and/or intent" and would help "the jury as to the background of why this may have occurred." (See *People v. Williams* (1997) 16 Cal.4th 153, 193 (*Williams*) ["[I]n a gang-related case, gang evidence is admissible if relevant to motive or identity, so long as its probative value is not outweighed by its prejudicial effect."].) However, the trial court told the parties if there were issues with "particular areas of the evidence," defense counsel should bring them to the court's attention at that time.

Garrett does not argue the trial court erred in determining the evidence was relevant and admissible pursuant to Evidence

Code section 352.[5] Rather, he argues the evidence violated Penal Code section 1109 and the California Racial Justice Act of 2020 (RJA). (See Assem. Bill No. 2542 (2019–2020 Reg. Sess.), Stats. 2020, ch. 317, § 1.) We disagree.

### A. Garrett Forfeited His Meritless Claim of Section 1109 Error

According to Garrett, Detective Woods's testimony should have been excluded pursuant to section 1109, subdivision (a). In his view, the Legislature sought to mitigate the possible prejudice that could result from gang evidence by allowing the bifurcation of trials on gang enhancements. (See Assem. Bill No. 333 (2021–2022 Reg. Sess.), Stats. 2021, ch. 699, § 2, subds. (d)(6), (e), (f).)

Garrett has forfeited this claimed error because he failed to object on this ground in the trial court. Garrett asks us to overlook his failure to raise the issue in the trial court. We decline to do so. (See *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 (*Doers*)[" '[we] will ordinarily not consider procedural defects or erroneous rulings . . . where an objection could have been but was not presented to the lower court . . . .' "], abrogated in part on other grounds by *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 581–582.)

Moreover, the claim of error is meritless. The bifurcation rule of section 1109 applies only in "case[s] in which a gang enhancement is charged under subdivision (b) or (d) of Section 186.22." (§ 1109, subd. (a).) Garrett concedes no gang

---

[5]    We therefore accept that ruling as correct. (See *Tukes v. Richard* (2022) 81 Cal.App.5th 1, 12, fn. 5 ["A contention not appropriately raised in the opening brief under a separate argument heading may be deemed forfeited."].)

enhancements were charged here. Section 1109 therefore is inapplicable.[6]

To the extent Garrett argues the Legislature broadly limited the use of gang evidence at trial, even when a gang enhancement was not charged, we disagree. Section 1109 does not limit the use of gang evidence in appropriate circumstances, such as when it is "relevant to motive or identity" "in a gang-related case, . . . so long as its probative value is not outweighed by its prejudicial effect." (*Williams*, *supra*, 16 Cal.4th at p. 193; see also Assem. Bill No. 333 (2021–2022 Reg. Sess.), Stats. 2021, ch. 699, § 2, subd. (e), citing *Williams*, *supra,* at p. 193; *People v. Hinojos* (2025) 110 Cal.App.5th 524, 551 [in a bifurcated trial, gang evidence was properly admitted when relevant to the defendant's motive for murder and to understanding coded communications].) The trial court concluded this evidence was relevant for those purposes and not unduly prejudicial, and Garrett has not challenged that conclusion on appeal.

### B.     The Testimony Did Not Violate the RJA

Garrett also argues the trial court should have excluded Detective Woods's testimony under the RJA. The People argue Garrett forfeited this claim by failing to raise it in the trial court. Although not pointed out by Garrett, there is some ambiguity whether a defendant may make an RJA claim for the first time on direct appeal. (See *People v. Lawson* (2025) 108 Cal.App.5th 990, 999–1001 (*Lawson*); see also § 745, subd. (b).) We decline to

---

[6]     Because Garrett's claim of section 1109 error lacks merit, his related claim of ineffective assistance of counsel also necessarily fails. (See *People v. Ledesma* (2006) 39 Cal.4th 641, 748 (*Ledesma*).)

address that issue because we conclude the claimed error fails on its merits. (See *Lawson*, *supra*, at p. 1001.)

The RJA prohibits the state from "seek[ing] or obtain[ing] a criminal conviction . . . on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).) As relevant here, a defendant shows a violation by "prov[ing], by a preponderance of the evidence," that "an expert witness . . . used racially discriminatory language about the defendant's race, ethnicity, or national origin, or otherwise exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin." (§ 745, subd. (a)(2).) " ' "A fact is proved by a preponderance of the evidence if . . . it is more likely than not that the fact is true." ' " (*Lawson*, *supra*, 108 Cal.App.5th at p. 1001.)

According to Garrett, Detective Woods's testimony "exhibited bias or animus towards [Garrett] because of [his] race in that the testimony dehumanized [him] by stripping him of any aspect of his humanity that would empower jurors to empathize with him." Garrett has cited no authority suggesting Woods's testimony here "exhibited bias or animus" based on Garrett's race. He asserts that it "violated the RJA for the same reasons that it violated AB33 [*sic*]." But, as we have already explained above, the testimony did not violate section 1109.

Moreover, to establish a violation of the RJA, Garrett must demonstrate "it is more likely than not [this testimony was] motivated by racial bias or animus, whether explicit or implicit, as opposed to some other reason." (*Lawson*, *supra*, 108 Cal.App.5th at p. 1002.) Garrett has pointed to no evidence suggesting Detective Woods was motivated by impermissible racial bias or animus. Without any evidence of bias or use of questionable language, it is at least as likely (if not more so) Woods's testimony was instead motivated by his obligation to

respond truthfully, under oath, to questions posed to him by counsel. (See *ibid.* [court's evidentiary rulings were more likely motivated by "legitimate assessments of relevance" rather than racial bias]; see also Evid. Code, §§ 710, 766.)

To the extent Garrett means to argue Detective Woods's gang testimony amounted to " '[r]acially discriminatory language,' " we do not agree the testimony "explicitly or implicitly appeal[ed] to racial bias." (See § 745, subd. (h)(4).) That an expert witness testified about gang culture, without more, does not demonstrate by a preponderance of the evidence the witness used racially discriminatory language within the meaning of the RJA. (See *Lawson, supra,* 108 Cal.App.5th at p. 1001 [the defendant failed to show challenged language met the definition of racially discriminatory language]; see also *People v. Quintero* (2024) 107 Cal.App.5th 1060, 1077–1078 [use of race-neutral terms such as " 'monster' " and " 'predator' " in closing argument did not violate the RJA given the facts of the case].) And as we have already explained, the evidence Woods provided regarding gang culture and other topics was relevant to motive and intent and was not unduly prejudicial to Garrett. (See *Williams, supra,* 16 Cal.4th at p. 193; see also *Lawson, supra,* at p. 1003 [admitted evidence was "highly relevant" and "probative of [the defendant's] state of mind regarding the shooting"].)

Thus, Garrett has not shown the admission of Detective Woods's testimony violated the RJA.[7]

---

[7] Because Garrett's claim of RJA error fails on its merits, his related ineffective assistance of counsel claim also necessarily fails. (*Ledesma, supra,* 39 Cal.4th at p. 748.)

## II. The Trial Court Did Not Abuse Its Discretion in Imposing Garrett's Sentence

### A. Standard of Review

"We consider a trial court's sentencing decisions under an abuse of discretion standard of review." (*People v. Moseley* (2024) 105 Cal.App.5th 870, 874.) Garrett concedes review is for abuse of discretion. "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

### B. Garrett Forfeited His Argument the Trial Court Should Have Ordered a Postconviction Probation Report

It is undisputed the trial court considered the probation officer's preconviction probation report, the People's sentencing memorandum, and a victim impact statement in imposing Garrett's sentence. Garrett argues the trial court should have obtained a postconviction probation report before imposing his sentence because he was not interviewed for the preconviction report. But he has not identified anywhere in the record where he asked the court to order the preparation of a postconviction probation report. Therefore, he has forfeited appellate review of that issue. (See *Doers*, *supra*, 23 Cal.3d at p. 184, fn. 1.)

We also note Garrett's argument is meritless: a trial court is not even required to order a probation report, where, as here, the defendant is statutorily ineligible for probation. (*People v. Bullock* (1994) 26 Cal.App.4th 985, 987; see *id.* at p. 989 ["a report is not required for [probation-ineligible] defendants upon original sentencing"]; see also § 1203, subds. (e)(2)–(3), (g); § 1203.06, subd. (a)(1)(A).)

10

### C. Garrett Forfeited His Argument the Trial Court Should Have Considered Potential Mitigating Circumstances

Garrett argues the trial court should have considered potential mitigating circumstances in imposing his sentence. He claims he may have been willing "to discuss his childhood, why he became involved with a gang, whether he had substance abuse issues, physical or mental disabilities, etc.," and that information could have informed the court's sentencing decision. (See §§ 1170, subd. (b)(6), 1385, subd. (c)(1)–(2).) However, Garrett essentially concedes his counsel did not ask the trial court to consider any mitigating circumstances at sentencing. We thus conclude he has forfeited appellate review of that issue. (See *Doers*, *supra*, 23 Cal.3d at p. 184, fn. 1.)

### D. Garrett Did Not Demonstrate Defense Counsel Rendered Ineffective Assistance at Sentencing

Finally, Garrett argues defense counsel rendered him ineffective assistance at sentencing because counsel failed: (1) to request preparation of a new probation report; (2) to ensure the court understood the potential impact of mitigating circumstances in his case; and (3) to know the correct length of sentence Garrett was exposed to on the gun enhancement.

A defendant has a right to effective assistance of counsel at trial and sentencing. (*Strickland v. Washington* (1984) 466 U.S. 668, 684, 686; *Ledesma*, *supra*, 39 Cal.4th at pp. 745–746.) "In order to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it 'fell below an objective standard of reasonableness . . . under prevailing professional norms.' " (*Ledesma*, *supra*, at pp. 745–746.) "[U]nless the record reflects the reason for counsel's actions or omissions, or precludes

11

the possibility of a satisfactory explanation, we must reject a claim of ineffective assistance raised on appeal." (*Id.* at p. 746.) Once the defendant meets his burden to show counsel's performance was deficient, "he or she also must show that counsel's deficiencies resulted in prejudice, that is, a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (*Ibid.*)

Here, Garrett has not shown defense counsel's performance was deficient in failing to request a probation report or failing to argue for various mitigating factors under section 1170 or section 1385. On this record, counsel reasonably could have determined no new probation report was warranted because there were no relevant mitigating circumstances in Garrett's background. While Garrett posits he may have been willing to discuss his background, he does not assert, let alone point to any evidence in this record, that mitigating circumstances were actually present and not discovered. Thus, the record does not "preclude the possibility that defense counsel's actions were based upon reasonable strategic decisions." (*Ledesma, supra*, 39 Cal.4th at p. 746; see also *People v. Jasso* (2025) 17 Cal.5th 646, 676 [factual record did not allow ineffective assistance claim to be resolved on direct appeal].)

Garrett also argues defense counsel rendered ineffective assistance because counsel mistakenly said the gun enhancement he faced was "an additional 25 to life." (See § 12022.53, subd. (d).) Garrett actually faced an enhancement under section 12022.5, subdivision (a), which adds "an additional and consecutive term of imprisonment . . . for 3, 4, or 10 years." (§ 12022.5, subd. (a).) But that minor mistake does not amount to ineffective assistance.

Defense counsel requested the trial court find the gun enhancement not to be true, and the court recognized its

discretion to strike the gun allegations pursuant to section 12022.5, subdivision (a), but concluded that was not "in the interest of justice because of the . . . facts of the case and the defendant was on post release community supervision at the time the offense was committed." The court did not impose the sentence erroneously mentioned by defense counsel. We see no reasonable probability the sentencing outcome would have been different in the absence of counsel's minor mistake. (See *Ledesma*, *supra*, 39 Cal.4th at p. 746 [showing of prejudice required].) Garrett does not argue otherwise.

**DISPOSITION**

The judgment is affirmed.

RICHARDSON, J.

WE CONCUR:

LUI, P. J.

GOORVITCH, J.*

---

* Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.